RENDERED: MAY 5, 2016
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

2015-SC-000212-DGE

DATE 5-26-16 Elit Grauth, D.C.

MICHELLE CARVER (BUTLER)                                         APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                              CASE NO. 2014-CA-000991-ME
BOYD CIRCUIT COURT NO. 12-CI-00841


LANCE G. CARVER                                                   APPELLEE


**OPINION OF THE COURT BY JUSTICE NOBLE**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**


In this case, the Court of Appeals affirmed the Boyd Circuit Court, which deviated from the statutory guidelines support amount by setting the child-support obligation of Appellee, Lance Carver, at $60 per month, based on his living expenses. Appellant, Michelle Carver (Butler), asks this Court to reverse that holding as an abuse of discretion. We affirm in part and reverse in part, address deviations from the statutory guidelines, and remand to the Boyd Circuit Court.

**I. Background**

Michelle and Lance were married on June 23, 2011, in Boyd County, Kentucky, one month after the birth of their son, Dennis. Dennis has Down syndrome and several other serious health issues. By August 2012, Lance had

filed for divorce. Thereafter, the parties litigated the divorce and acknowledged Dennis as a child of the marriage.

The parties were ordered to mediation, where they settled the division of their property, and custody, support, and visitation. The property settlement agreement, which was incorporated into the decree on April 23, 2013, stated that the parties would have joint custody of their child, with Michelle to be the "primary physical custodian" and Lance to have "parenting time" according to an agreed-upon schedule. Further, Lance agreed that he would "pay child support to the Respondent based upon the child support guidelines and the case law." Neither the decree nor the property settlement agreement stated a specific amount of child support. So Lance simply did not pay any.

Almost immediately, the parties began disputing time sharing and medical care for the child. In February 2014, Lance filed a verified motion asking the court to order Michelle to show cause why she should not be held in contempt for various claimed violations of the court's orders. In her response to that motion, Michelle addressed Lance's complaints, but also informed the court that he had never paid the agreed-upon support, asked the court to set a specific amount according to the statutory guidelines, and asked for that amount to be retroactive to the date of the decree.

While Lance *had* agreed to pay child support under the guidelines, the court had never set a specific amount of child support, as noted above. Consequently, Michelle offered two versions of the child support worksheet, asking that the court order either $265 or $245 per month. In addition to various matters relating to time sharing and care for the child, this request to

2

set child support was sent to the Boyd County Domestic Relations Commissioner (DRC) to make a report and recommendations to the circuit court.

At a hearing on these matters, the DRC heard testimony about the income of each party and the income Michelle received on behalf of the child. The DRC found that Michelle received disability payments of $938 per month and $489 per month for the benefit of the child. Lance received $689 per month disability and $702 per month, on average, from permissible employment for a total of $1,391 per month. She did not include the child's income in making the child support worksheet computations, concluding that the $489 was due to the child's disability and not the disability of either parent. However, the written record of the hearing consisting of the DRC's notes (contained in the record in lieu of a missing video recording) does not support this finding, but rather indicates that the child's income was from Social Security, which perforce had to derive from one of the parents as dependent benefits. The DRC thus arrived at a joint monthly adjusted gross income of the parties of $2,329. Lance's proportionate support under the guidelines, based on each party's income, was determined to be $232 per month and Michelle's proportionate share was $157 per month.

However, the DRC then considered Lance's evidence of his monthly living expenses, including his mortgage, utilities, groceries, insurance, taxes, and expenses for travelling to work and to the child's medical appointments. No testimony was taken regarding Michelle's living expenses. At that point, the DRC appears to have added the child's income back in to Michelle's gross

3

monthly income, concluding that Michelle had a monthly amount of "$1,407 total income into her home." (The actual amount is $1427 per month, plus the ordered $60 per month in support from Lance for a total of $1487 per month.) The DRC concluded: "Based on all of the foregoing, the Commissioner finds that it is appropriate to deviate from the guidelines in this matter, setting the Petitioner's child support obligation at $60.00 per month."

Michelle filed exceptions to the Commissioner's Report and Recommendations with the Boyd Circuit Court. Specifically, she noted that the Commissioner found that the child received "a social security check for his disability, when in fact the parties' minor child receives a disability payment because of Respondent's disability, not the minor child's disability." Citing *Artrip v. Noe,* 311 S.W.3d 229 (Ky. 2010), Michelle pointed out that when money is allocated to a child because of a parent's disability, the money cannot be counted as income to either parent when calculating child support but is instead a credit against the support owed by the party whose disability lead to income for the child. This argument derived from the fact that the DRC apparently did consider that income in *deviating* from the guidelines, by including it in Michelle's total monthly income. The circuit court overruled the exceptions and accepted the DRC's report as final. Michelle filed a motion to alter, vacate, or amend, which the circuit court also overruled.

On appeal, the Court of Appeals affirmed the Boyd Circuit Court. This Court granted discretionary review to address the role of the statutory support guidelines and the factors which should be considered when a deviation from

4

the guidelines is necessary because the guidelines amount is unjust or inappropriate.

## II. Analysis

Family courts and litigants have placed widespread reliance on KRS 403.212, better known as the Child Support Guidelines statute, to fix support payments since its enactment in 1990. These guidelines were developed in accordance with the Family Support Act of 1988, which directed the various states to implement such guidelines. The guidelines were established by a statutory Commission consisting of persons appointed by the governor. KRS 403.213(4). The Commission was charged with making a recommendation to the General Assembly "to ensure the child support guidelines table results in a determination of appropriate child support amounts." KRS 403.213(5). Further, the Commission was charged with reviewing the guidelines "at least once every four (4) years" to determine whether the stated guidelines amounts remain appropriate. KRS 403.213(4). However, the child support amounts have not been significantly changed since their initial enactment.

But as the statute itself states, "the child support guidelines in KRS 403.212 shall serve as a *rebuttable presumption* for the establishment or modification of the amount of child support." KRS 403.211(2) (emphasis added). That same section further provides that "[c]ourts may deviate from the guidelines where their application would be unjust or inappropriate," provided the court makes a finding specifying reasons for deviation.

Given that plain language, it should be unnecessary for an appellate court to continue to explain that the guidelines amounts specified in KRS

5

403.212 are just that—guides—and not black letter law. Nonetheless, courts and litigants often adhere to the guidelines amounts as mandatory, which leads to arguments such as those before the Court in this case. Instead, courts have broad discretion to deviate from the presumptive guidelines, limited only by reasonableness and actually making a record of the reason for deviation. KRS 403.211(2). Possibly this issue frequently arises because the ease and certainty of using guidelines amounts appeals to litigants and courts. But the guidelines do not necessarily dictate the ultimate result because of allowable deviations. As in many instances, rote application of any law effectively nullifies a primary reason courts exist—to make personalized decisions within the law when discretion is required—because one size does not fit all.

In describing the guidelines as a presumption, the General Assembly clearly recognized that the passage of time, "extraordinary circumstances" of the parties or the child, or other economic factors, could cause application of the guidelines to be "unjust or inappropriate in a particular case," and specifically granted courts the power to deviate in that event. KRS 403.211(2). And while much of our family statutory and case law focuses generally on the best interests of the child, the support statutes focus on the *needs* or *standard of living* of the child, whichever is greater. KRS 403.211(5).

Sadly, this case presents a situation where the needs of the child of this marriage almost certainly exceed the capability of the parents to pay for them, with the government likely providing for some of those needs, especially the extensive medical care. It is likewise obvious that this case is one which cannot fall cleanly under the guidelines tables. Certainly, this case demonstrates that

6

reading the guidelines too literally could cause an absurd, draconian result when, as here, there is likely not enough money in the entire family pool to fully support two households of disabled adults with a disabled child.

Nonetheless, the guidelines are the *starting point* in arriving at an appropriate amount of child support each party is legally responsible for. The DRC began this process through completing a "Commonwealth of Kentucky Worksheet for Monthly Child Support Obligation."

Michelle has a monthly gross income of $938 from disability income. Even though the child receives a disability benefit in the sum of $489, this amount cannot be included in determining Michelle's income for child support purposes since it appears to derive from her Social Security disability award rather than the child's own disability, based on the written record of the testimony given about income. KRS 403.211(15). Instead, the Worksheet must be completed using only Michelle's income to arrive at her child support obligation, which the DRC correctly did. And, to the extent Michelle is responsible for child support under the guidelines, here $157, the statute requires that the disability income for the child be *credited* against that obligation.

Lance has a monthly gross income of $1,391 from disability benefits and allowable work. Since the child's disability income does not derive from him, he gets no credit toward his guidelines child support amount of $232. The base monthly support, adding Michelle's and Lance's support obligation together, is $389.

But the DRC considered Lance's living expenses, and concluded that he could not pay that amount. Instead, she reduced his support obligation to $60 per month, but stated no reasons why that was an appropriate amount. In so doing, no consideration was given to Michelle's living expenses. This highlights how child support is often viewed: as if the support obligation only applies to the payor parent. This is clearly not correct. Under the statutes and through the worksheets, the financial obligation of *each* parent toward the child is established. While the residential parent does not make a child support *payment,* that parent does have a support obligation. Both parents have living expenses they must pay.

Here, the DRC did not consider Michelle's expenses when deviating on the amount of support she set for Lance. A good record was made for Lance as to how his money was spent each month, through the help of his sister. No proof was taken regarding the same kind of expense for Michelle, or if any was, it was not considered in deviating from the guidelines amount in setting Lance's support obligation. If families lived on the page of a child support guidelines worksheet, this would not matter so much. But Michelle is the residential parent for this child. It is left to her to pay for the shortfall in support expenses left from granting Lance a low support obligation.

While it is clear that Lance cannot support himself at his present minimal lifestyle and pay the guidelines amount of support, it is equally arguable that Michelle, based on her income, cannot be responsible for the amount of support assigned to her, *and* the shortfall that comes with Lance paying less than his assigned support amount. Even if the deviation is a

8

sympathetic, reasonable result for Lance, the DRC's deviation results in an extremely lopsided result for Michelle. It can also undercut the intent of the child support legislation—that the parents bear their fair share of supporting their child. Under this deviation, Michelle has three-fourths of the responsibility for supporting the minor child.

So what should the DRC have done?

First, because both Lance and Michelle are disabled, there is little avenue for them to increase their incomes. The disability of both parents is a factor that takes them outside the "ordinary persons" upon which the guidelines are premised. If the DRC had considered the expenses of both parents and then concluded that the guideline amount was sufficiently unjust to allow for a deviation down from the total support owed for the child, in turn reducing the support of each parent, then there would have been an appropriate finding to support such deviation. Here, basing Lance's support obligation on his expenses alone, is error.

And, because this child is "extraordinary," his needs are likely greater that those of the average child at this income level, and the guidelines amount, because of the child's greater needs, is likely an inappropriate amount. This is another reason why deviation can be appropriate in this case. The record does not contain evidence as to how much of the child's needs are being met by governmental or other social services. But it is not too difficult a burden for the two parents to arrive at the reasonable monthly needs of this child that are not covered by other sources. If the guidelines amount is not appropriate, then the court must determine what an appropriate amount of support would be. When

9

the guidelines amount is not adequate for a child's needs or is otherwise unjust or is inappropriate, it may be that more of the combined family income is necessary to provide for extraordinary child support needs. In this event, there could be reason to deviate *upward.* Or, should the proof demonstrate that the child's extraordinary needs are, in fact, being mostly if not entirely covered by various other sources of governmental support—i.e., Medicaid, WIC benefits, etc.—then such a deviation would not be called for. But in addition to the child's needs, the amount of deviation will necessarily be defined by what the parents actually *have* as available income to support their child.

Here, the combined family income is $2,329 per month. Lance contributes 59.73% of that income, and Michelle contributes 40.27%. The court must examine what the child's actual need for support is, considering what part of the child's needs are being met from sources other than the parents. Whatever that amount is, then that amount of support would ordinarily be apportioned between the parents based on the respective income share of each. But these are income-restricted parents. In the event the need for support is greater than the financial resources of the parents, then the court should assign how much of the support each must be responsible for on a reasonable and equitable basis, taking into account the child's needs as well as the reasonable living needs of both parents.

Thus, it may simply be either that a parent might have some determinable inability to pay, or the extraordinary need for support of a given child, that makes the guidelines application inappropriate. Whatever the basis, a court must be able to state a reason for the deviation from the guidelines

10

support amount. While the thrust of our statutes and case law is that the child's needs must be met first, the reality is that some consideration must still be given to a parent's ability to pay. There can be no clear-cut rule for making the determination to deviate nor for how much the deviation should be. When the guidelines amounts are articulably unjust or inappropriate, the trial court, who is best informed of the circumstances of a case, is in the best position to make the equitable determination of an appropriate amount of support to be assigned to each parent on a case-by-case basis. It is simple fact that when cases are outside the guidelines, courts are left with the difficult determinations they had to make before the enactment of presumptive guidelines.

That is actually, to some extent, what the DRC did here. She looked at the income available in both homes, and since Michelle had her disability income, the income for the child, and $60 in child support, the DRC concluded that Michelle's household could function on that net amount of $1,487. This left Lance with $1,331 for his living expenses and to provide a home for the child during time sharing. On its face, this looks like an equitable result.

But what this actually does in this case is increase the share of support for the child attributable to Michelle. If $389 is the total guidelines amount for base monthly support, then Michelle ends up being responsible for roughly 75% of the necessary support for their child, when Lance, under the guidelines, was responsible for nearly 60% before this deviation reduced his support obligation to approximately 25%.

But the question remains: Is this an unreasonable deviation from the guidelines amount? Once a court determines that the guidelines are unjust or inappropriate, then the statute requires the court to make a specific finding for the deviation. Here, all the DRC noted was Lance's living expenses, based the deviation on those expenses, and arbitrarily set his support obligation at $60. (Presumably this is because that is the statutory minimum under the guidelines statute. *See* KRS 403.312(4).) But no real rationale was given for reducing Lance's support obligation under the guidelines by roughly 75%.

However, the record does indicate that the DRC considered income other than that attributable to Michelle. The amount of $489 per month is available for the child's benefit, based on Michelle's disability benefits. This amount of money subsumes Michelle's portion of any support obligation; she is given a credit against her obligation. The entire amount of the money is indeed coming into her household for the care of the child. The statute recognizes, however, that there is a benefit conferred on the parent responsible for generating the child's income by allowing it to offset that parent's support obligation. This benefit is less apparent to Michelle, since the child lives with her. Even so, as she makes provisions for the child's shelter and daily needs, she also receives some benefit from that money going toward shared living expenses.

The child's needs are being met, at least to some degree, through these funds (and apparently other outside sources, such as for his medical care). Having decided that Lance's income is insufficient to support himself *and* pay the guidelines support amount, in then determining how much the deviation should be, it is not unreasonable to decrease the amount of support that Lance

12

must pay because the support is being at least partially paid from another source, provided that the child's full reasonable needs are being met. While the funds for the child's benefit cannot be the reason for a deviation standing alone, *Artrip*, 311 S.W.3d at 233, they do have a bearing on what the child's support needs actually are when there is another reason to deviate from the guidelines.

We do not know what the child's reasonable need for support is here. There is no record of the child's living expenses so that a court could make a determination of what reasonable support is for this child based on the child's needs and the combined family income. While it is possible that a child's reasonable support needs could exceed the parent's ability to pay all of them, there is no justification for the parents failing to pay a reasonable amount of those needs, their "fair share," in light of the funds available.

### III. Conclusion

Thus, we affirm in part and reverse in part in this case. We affirm the Court of Appeals' conclusion that a deviation from the guidelines was appropriate under the facts of this case. But we reverse the part of their opinion holding that the DRC did not abuse her discretion in setting Lance's child support at $60 per month based on his living expenses. That was simply not the proper inquiry. On remand, the trial court should first ascertain what is a reasonable amount of support for this child and then determine how much of that support should be the responsibility of each parent. It is possible that the parents simply do not have enough income to meet *all* of the child's support needs. But based on the reasonable support needs of the child, and

13

each parent's reasonable ability to pay a portion or all of that support need, a reasonable amount of support obligation for each parent can be determined. And, in extremely low income cases such as this one, the reasonable ability of each parent to pay support need not include a support payment so great that the parent cannot maintain his or her own reasonable living expenses, so long as both parents are considered in apportioning support responsibility in light of all the financial resources available.[1]

All sitting. Minton, C.J.; Cunningham, Hughes, Venters and Wright, JJ., concur. Keller, J., concurs in result only.

COUNSEL FOR APPELLANT:

Glenda Harrison
Legal Aid of the Bluegrass
104 East Seventh Street
Covington, Kentucky 41011

COUNSEL FOR APPELLEE:

Richard A. Hughes
Law Office of Richard A. Hughes
PO Box 1139
Ashland, Kentucky 41105

---

[1]We do caution, however, that the principles applied in this case only apply when a deviation from the guidelines is appropriate, which is generally going to be a deviation downward. Unless parents have sufficient income to adequately maintain their own support, as well as support greater than the guidelines amount based on the reasonable needs of the child, then there cannot be a departure upward.